## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISON

STEPHEN KNUTH.,

CASE NO.: 3:18-cv-244-J-25JRK

Plaintiff,

vs.

CONSUMER SAFETY TECHNOLOGY,
LLC, d/b/a INTOXALOCK,

Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, STEPHEN KNUTH, by and through undersigned counsel,

hereby sues the Defendant, CONSUMER SAFETY TECHNOLOGY LLC, d/b/a

INTOXALOCK (hereinafter "CST, LLC"), and in support thereof respectfully, alleges the

following:

1.      Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C.

§227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et*

*seq.* ("FCCPA").

## INTRODUCTION

2.      The TCPA was enacted to prevent companies like CST, LLC, from invading

American citizens' privacy and prevent abusive "robo-calls."

3.      The TCPA is designed to protect individual consumers from receiving intrusive

and unwanted telephone calls. *See Mims v. Arrow Fin. Servs., LLC.,* 132 S.Ct. 740, 745 (2012).

4.      "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of

modern civilization, they wake us up on in the morning; they interrupt our dinner at night; they

force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *See Mims* at 752 (*quoting* 137 Cong. Rec. 30, 821 (1991)). Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal,* FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by F.S. § 47.011 and/or by 28 U.S.C. § 1332, diversity jurisdiction.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

8. Venue is proper in this District because the Plaintiff resides in this District (Duval County, Florida), the phone calls were received in this District and the Defendant

transacts business in Duval County, Florida.

## FACTUAL ALLEGATIONS

9.      Plaintiff STEPHEN KNUTH. is a natural person, and citizen of the State of Florida, residing in Duval County, Florida, and resides in this District.

10.      Plaintiff, STEPHEN KNUTH is a "consumer" as defined in Fla. Stat. § 559.55(2).

11.      Plaintiff STEPHEN KNUTH is an "alleged debtor."

12.      Plaintiff STEPHEN KNUTH is a "called party." *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012), *reh'g denied* (May 25, 2012).

13.      Defendant is a "debt collector" as defined by Fla. Stat. § 559.55(6). Defendant sought to collect a debt from Plaintiff.

14.      The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(1).

15.      Defendant, CONSUMER SAFETY TECHNOLOGY, LLC, is a limited liability company which was formed in Delaware with its principal place of business 11035 Aurora Ave Building I, Urbandale, IA 50322 and conducts business in the State of Florida.

16.      The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, in Duval County, Florida, by the Defendant's placing of illegal calls to Duval County, Florida.

17.      Defendant, at all material times, was attempting to collect on a consumer product financing debt entered into by Plaintiff, STEPHEN KNUTH (hereinafter the "subject account"), which was originally issued and serviced by Defendant for a Intoxalock ignition interlock device.

18.      Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous

occasions by calls to his cell phone (954-290-6537).

19.     Defendant called this number multiple times, despite *clear* oral and written requests from Plaintiff to stop calling, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

20.     Upon information and belief, and with the understanding that most of the numbers called did not even belong to the debtor on the subject account, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C.§ 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that there was a pause before a live person came on the line.

21.     Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone numbers was done after he had revoked consent and without the "prior expressed consent" of the Plaintiff.

22.     Specifically, on March 21, 2017, Plaintiff sent a written revocation of consent to Defendant. This written revocation also alerted Defendant to his representation by legal counsel and requested that Defendant communicate to him only through his legal counsel, Max Story. *See Exhibit A.*

23.     There were at least twelve (12) phone calls from the Defendant to Plaintiff's cell phone following this revocation in 2017. These calls are detailed in the list attached as *Exhibit B.*

24.     Since then, Plaintiff has told numerous representatives from Defendant to stop calling him but the calls have continued through the present.

25.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond, when Plaintiff first advised Defendant to stop calling him.

26.    Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite the individual, like Plaintiff, advising Defendant to stop calling.

27.    Defendant's corporate policy provided no means for the Plaintiff to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

28.    Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

29.    Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular phone.

30.    Due to Defendant's constant autodialer calls and demands for payment, Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
## (Violation of the TCPA)

31.    Plaintiff STEPHEN KNUTH re-alleges and incorporates Paragraphs one (1) through thirty (30) above as if fully stated herein.

32.    None of Defendant's autodialer calls placed to Plaintiff STEPHEN KNUTH were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

33.    As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of

Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

34.     For each call Defendant made to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls or texts.

35.     For each call Defendant made to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for the calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered texts by dealing with notifications and pop ups that reflected the unwanted texts. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

36.     Each and every call made without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

37.     Each and every call Defendant made to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

38.     Each and every call Defendant made to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

39.     As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy

6

and the intrusion upon his right of seclusion. Plaintiff also suffered from stress, embarrassment, indignation, emotional distress, mental distress, pain and suffering, and the phone calls aggravated an existing illness. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, privacy, and reputation. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

40.     Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent both orally and in writing to be called and without Plaintiff's prior express consent.

41.     The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in 2017, when Plaintiff withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact him, and told Defendant to stop calling him.

42.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff STEPHEN KNUTH respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CONSUMER SAFETY TECHNOLOGY. LLC, for statutory damages, actual damages, treble damages, punitive damages, costs, interest, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

43.    Plaintiff STEPHEN KNUTH incorporates Paragraphs one (1) through thirty (30) above as if fully set forth herein.

44.    At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

45.    On or about March 21, 2017, Plaintiff told Defendant's agent that he was being represented by attorney Max Story, Esq. and provided his information to Defendant. *Exhibit A.*

46.    Plaintiff also told Defendant of his representation each time Defendant called him.

47.    Defendant had full knowledge of Plaintiff's representation and Max Story's contact information, and yet continued to contact Plaintiff improperly.

48.    By continuing to contact the Plaintiff STEPHEN KNUTH multiple times after being told that Plaintiff was being represented, the Defendant violated the Florida Consumer Collection Practices Act, specifically:

a.   "... willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;" Florida Statute §559.72(7). and

b.   "Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." Florida Statute §559.72(18).

49.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

WHEREFORE, Plaintiff STEPHEN KNUTH. respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CONSUMER SAFETY TECHNOLOGY, LLC for statutory damages, punitive damages, actual damages, treble damages, costs, interest,

and any other such relief the court may deem just and proper.

## TRIAL BY JURY

50.     Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues

so triable.

Dated this 12th day of February, 2018,

**MAX HUNTER STORY, P.A.**

/s/ Max H. Story, Esq.
Max Story, Esquire
Florida Bar No. 0527238
Austin J. Griffin, Esquire.
Florida Bar No. 0117740
328 2ND Avenue North
Jacksonville Beach, Florida  32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
Attorneys for Plaintiff